## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| HI-TECH PHARMACEUTICALS, INC.,    ) | |
|        ) | |
|     Plaintiff,    ) | |
|        ) | |
| v.    ) | |
|        ) | Case No. |
| USPLABS, LLC, JACOBO GEISSLER,    ) | |
| JONATHAN DOYLE, MODERN SPORTS    ) | |
| NUTRITION, LLC AND DOES 1-100,    ) | |
|        ) | |
|     Defendants.    ) | |

## COMPLAINT WITH JURY DEMAND

Plaintiff Hi-Tech Pharmaceuticals, Inc. ("Hi-Tech"), for its Complaint with Jury Demand against the above-named Defendants USPLabs, LLC, Jacobo Geissler, Jonathan Doyle and Modern Sports Nutrition, LLC (collectively "Defendants"), alleges the following:

### NATURE OF THE ACTION

1.       This action is for federal unfair competition under 15 U.S.C. § 1125, unfair competition under Texas common law, tortious interference with prospective business relationships, injury to business reputation arising under Texas Business & Commerce Code, Tex. Bus. & Com. Code Ann. § 16.29, as well as relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

### THE PARTIES

2.       USPlabs, LLC ("USP Labs") is a corporation organized under the laws of the State of Texas with a principal place of business at 10761 King William Drive, Dallas, Texas 75220, and may be served with process at that address.

3.      Jacobo Geissler (a.k.a. Jaco Geissler) was the co-founder and CEO of USP Labs. On information and belief, Geissler resides at 8001 Tulane Street, Dallas, Texas 75225 and may be served with process at that address.

4.      Jonathan Doyle was the co-founder, co-owner and president of USP Labs.  On information and belief, Doyle resides at 4723 Royal Lane, Dallas, Texas 75229 and may be served with process at that address.

5.      Modern Sport Nutrition, LLC ("Modern Sport Nutrition") is a corporation organized under the laws of Delaware with a principal place of business in 515 Braddock Ave, Turtle Creek, PA 15145, and may be served with process at that address.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338, and under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. This Court has jurisdiction over the subject matter of the common law trademark infringement, common law unfair competition, tortious interference with prospective business relationships and injury to business reputation claims pursuant to 28 U.S.C. § 1338(b) and supplemental jurisdiction under 28 U.S.C. § 1367.

7.      USP Labs is subject to personal jurisdiction in because: (1) it is a Texas corporation; (2) regularly conducts business within and has had systematic and continuous contacts with Texas; (3) the activities giving rise to Hi-Tech's claims occurred, at least in part, within Texas; and (4) Hi-Tech has been damaged in Texas by USP Labs' tortious conduct.

8.      The court has jurisdiction over the remaining Defendants in that each either resides in Texas, has committed acts within Texas and this judicial district giving rise to this action, and has established minimum contacts with the forum through USP Labs and otherwise such that the

exercise of jurisdiction over these Defendants would not offend traditional notions of fair play and substantial justice.

9.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b), 1391(c), and 1400(b), for at least the reasons that the Defendants reside in this judicial district, have committed acts within this district giving rise to this action, do business in this district through USP Labs and otherwise and are providing services in this district.

## GENERAL ALLEGATIONS

**USP Labs and its Principals Were Criminally Indicted for Their Dietary Supplements**

10.     In November 4, 2015, the United States Attorney's Office for the Northern District of Texas filed Criminal Indictment 3-15-CR-494 against USP Labs and its principals Jacobo Geissler, Jonathan Doyle, Matthew Hebert, Kenneth Miles and Cyril Willson.  **Exhibit A**.  The entities responsible for the manufacturer of USP Labs' products, S.K. Laboratories, Inc. ("S.K. Laboratories") and Sitesh Patel, were also named as defendants in the indictment.

11.     The case against USP Labs and the other indicted defendants involved the workout and weight loss supplements "Jack3d" and "OxyElite Pro."

12.     According to the indictment, USP Labs and its principals engaged in a conspiracy to import ingredients from China using false certificates of analysis and false labeling and then lied about the source and nature of those ingredients after putting them in the products.

13.     USPLabs and its principals told its retailers and wholesalers that it used natural plant extracts in Jack3d and OxyElite Pro, when in fact, they were using a synthetic stimulant manufactured in a Chinese chemical factory.

14.     The indictment also alleged that USP Labs and the other indicted defendants sold some of their products without determining whether they would be safe to use when they knew of studies that linked the products to liver toxicity.

3

15.     According to the indictment, USP Labs put out several versions of the product OxyElite Pro, including a misbranded version called "Advanced Formula," which was recalled in 2013 in the wake of an investigation by the Food and Drug Administration ("FDA") into whether the supplement caused liver injuries in consumers.

16.     USP Labs and its principals informed FDA in October 2013 that it would stop distribution of OxyElite Pro after the product had been implicated in the outbreak of liver injuries.

17.     Despite this promise, USP Labs engaged in a surreptitious, all-hands-on-deck effort to sell as much of the product as it could as quickly as possible.

18.     The counts against USP Labs and its principals included Wire Fraud, Conspiracy to Commit Wire Fraud, Obstruction of an Agency Proceeding, Conspiracy to Introduce Misbranded Food, Instruction of Adulterated Dietary Supplement Dietary Supplements and Conspiracy to Commit Money Laundering.

19.     A Superseding Indictment was filed on January 5, 2016 with allegations substantially similar to those in the original indictment in all relevant respects.  **Exhibit B**.

20.     Over various periods of time, USP Labs purported to hold federal trademark registrations for "USPlabs," U.S. Registration No. 3,954,592; "Jack3d," Registration No. 4,372,454; "USPlabs Jack3d," Registration No. 3,955,069; "Jack3d Micro," Registration No. 4,372,432, "OxyElite Pro," Registration No. 3,902,660; and "Modern BCAA," Registration No. 4,324,549.

21.     On August 18, 2017, the registration for the trademark "OxyElite Pro" was cancelled because USP Labs failed to file a Declaration of Use and/or Excusable Nonuse under § 8 of the Trademark Act.

4

**USP Labs and its Principals Pleaded Guilty to Conspiracy to Introduce Misbranded Food**

22. On February 28, 2019, all of the indicted defendants who played key roles in developing, manufacturing, or marketing the products Jack3d and OxyElite Pro (distributed by USP Labs) pleaded guilty to introducing misbranded food into interstate commerce with the intent to defraud or mislead. **Exhibit C**.

23. Jonathan Doyle, the president of USP Labs, pleaded guilty to conspiracy to introduce misbranded food into interstate commerce.

24. Jacobo Geissler, the CEO of USP Labs, pleaded guilty to conspiracy to introduce misbranded food into interstate commerce.

25. Cyril Willson and Matthew Hebert pleaded guilty to introducing misbranded food into interstate commerce with the intent to defraud or mislead.

26. Sitesh Patel (vice president of S.K. Laboratories), pleaded guilty to conspiracy to introduce misbranded food into interstate commerce and to the introduction of misbranded food into interstate commerce.

27. In pleading guilty, Doyle, Geissler, and Patel admitted that they imported substances with false and misleading labeling in part to avoid law enforcement and regulatory agency attention.  Willson and Hebert admitted that they helped to cause a dietary supplement to be shipped with false labeling regarding the ingredients it contained.

28. Under such circumstances, the use of any trademarks associated with the products accused in the indictment was not lawful use in United States commerce.

**As Part of a Plea Agreement USP Labs Agreed Not to Engage in Business Operations After May 28, 2019 and Not to Transfer any Corporate Trademarks at Any Time**

29. In a Plea Agreement dated February 28, 2019, USP Labs agreed to cease all business activities within ninety (90) days or by May 28, 2019:

5

> USP Labs agrees to ***cease all business activities*** within 90 days of the entry of this plea agreement, and immediately begin the liquidation of inventory.  USP Labs will notify the government of the case assets accrued following the winding down of the company.

**Exhibit C**, ¶ 7. (emphasis added).

30.     Under these terms, USP Labs is precluded from marketing or selling any dietary supplements.

31.     The products of USP Labs can longer be purchased on its interactive commercial website, www.usplabsdirect.com.

32.     Since at least June 24, 2019, USP Labs' website has been replaced with a single page containing a USP Labs graphic and a statement reading "USPlabs is not affiliated with, and its products are not endorsed by, the United States Pharmacopeia, Rockville, MD."  **Exhibit D**.

33.     As part of the plea agreement, USP Labs agreed not to assign or otherwise transfer any of its trademark rights:

> As part of the ceasing business, USP Labs ***agrees not to sell, transfer, lease or otherwise alienate the company's name or other trademarks at any time***.

**Exhibit C**, ¶ 7.

34.     These terms, coupled with the terms that prohibit USP Labs from conducting any business, preclude USP Labs from using or maintaining its trademarks in U.S. commerce in association with any dietary supplements and from assigning them to a third party for this purpose.

### Hi-Tech's Products, Marketing and Trademarks

35.     Plaintiff Hi-Tech is corporation organized and existing under the laws of the State of Georgia, with its principal place of business located at 6015-B Unity Drive, Norcross, Georgia, 30071.

36.     Hi-Tech is a leading manufacturer of dietary supplement products and sells, distributes, and markets its products throughout the United States and to other countries.

37.     Hi-Tech spends enormous resources to protect and enforce its extensive intellectual property, which includes a robust trademark portfolio in the United States and abroad.

38.     Hi-Tech's products are made available to the public through numerous channels, including traditional "brick-and mortar" stores, online retailers, and its own interactive website, https://hitechpharma.com/.

39.     Hi-Tech extensively promotes its products online and through social media.

40.     Consumers can access Hi-Tech's social media such as Facebook, Instagram and Twitter, directly through its website and elsewhere.

41.     Tens of thousands of consumers receive information about Hi-Tech's existing and anticipated product offerings through social media as reflected by its substantial audience following.  For example, Hi-Tech has over 50,000 Facebook followers and over 140,000 Instagram followers.

42.     Following the plea agreement by USP Labs, and in reliance thereon, Hi-Tech filed the following intent to use trademark applications:

     a.  OXYELITE PRO, Serial No. 88/352722, filed March 22, 2019, in connection with "Dietary and nutritional supplements, in International Class 005 (allowed).

     b.  USP LABS, Serial No. 88/595,250, filed August 27, 2019, in connection with "Dietary and nutritional supplements," in International Class 005.

     c.  YOK3D, Serial No. 88/595,244, filed August 27, 2019, in connection with "Dietary and nutritional supplements," in International Class 005.

     d.  SUPERCISSUS, Serial No. 88/595,235, filed August 27, 2019, in connection with "Dietary and nutritional supplements," in International Class 005.

e.  PINK MAGIC, Serial No. 88/595,232, filed August 27, 2019, in connection with "Dietary and nutritional supplements,' in International Class 005.

f.  JACK3D, Serial No. 88/595,228, filed August 27, 2019, in connection with "Dietary and nutritional supplements," in International Class 005.

g.  MODERN BCAA, Serial No. 88/639,582, filed October 2, 2019, in connection with "Dietary and nutritional supplements," in International Class 005.

43.    Following the plea agreement by USP Labs, Hi-Tech began marketing the products "Jack3d," "OxyElite Pro" and "Modern BCAA" (as shown below).

  

44.    Consistent with its established marketing practices, Hi-Tech promoted the marks USPLabs, Jacked3d and OxyElite and the associated products online, including the social media platforms Facebook and Instagram.

**UPSLabs Violates the Plea Agreement, Conducts Business Operations and Asserts Abandoned Trademarks Against Hi-Tech**

45.    On October 25, 2019, Hi-Tech received a notice from Instagram that the entirety of its content on its site had been removed.  **Exhibit E**.  According to the notice, the complaining party was USPLabs Direct, LLC the purported owner of rights in the trademark "USPlabs."  The attorney who lodged the complaint was attorney Braden Wayne at braden@stecklerlaw.com.

46.     The same day, Hi-Tech received another notice that certain content had been removed from its Facebook page.  **Exhibit F**.  According to the notice, the complaining party was USPLabs Direct identified as the purported owner of rights in the trademark "USPlabs."  The attorney who lodged the complaint was attorney Braden Wayne at braden@stecklerlaw.com.

47.     Enforcing USP Labs' trademarks against third-parties such as Hi-Tech, including issuing "take down" requests to social media sites, is in direct violation of the plea agreement to "cease all business activities" and is a misguided effort to assert invalid, abandoned trademarks to garner goodwill on behalf of a company that has no product base and is no longer in business.

**Hi-Tech's Extensive Efforts to Get Its Social Media Back Online**

48.     According to the notifications issued from Instagram and Facebook, in the event Hi-Tech believed the content was removed in error, Hi-Tech should contact the complaining party in an effort to resolve the issue.  According to the Instagram notice, if an agreement is reached to restore the reported content, the contacting attorney can email Instagram with the consent and include the report number.

49.     Given the urgency of the matter, counsel for Hi-Tech attempted to contact attorney Braden Wayne by phone and email the next business day, October 28, 2019, but no response was received.  **Exhibit G**.  In the correspondence, counsel for Hi-Tech made clear that, solely in an effort to get the social media sites active again, it would agree to temporarily remove the content that formed the basis of the complaint.

50.     Counsel for Hi-Tech tried again to contact Mr. Wayne on October 29, 2019, but numerous phone calls and emails were unanswered.  **Exhibit H**.  Finally, later that day, Mr. Wayne answered a phone call from Hi-Tech's counsel.  During this call, counsel for Hi-Tech noted that the large majority of the content on the social media pages had nothing to do with USP Labs, its trademarks, its products, or the current dispute.  Counsel again indicated that Hi-Tech would be

willing to remove the disputed content in exchange for Mr. Wayne contacting Facebook and Instagram indicating that the pages could be put back online.  Nonetheless, Mr. Wayne initially refused to agree to contact the social media platforms even to restore Hi-Tech's unaccused social media postings and indicated on the call that "I'm not sure I want to give up my leverage."

51.      When counsel for Hi-Tech indicated that USP Labs was not permitted under the plea agreement to engage in any business activities, much less enforcement efforts, and without the ability to sell any products the trademarks could not be in use in commerce, Mr. Wayne indicated that, contrary to the plea agreement, USP Labs had the right to enforce and assign its trademarks.

52.      On October 30, 2019, counsel for Hi-Tech again contacted Mr. Wayne to inquire whether USP Labs had provided any feedback regarding removing the hold on Hi-Tech's social media sites.  **Exhibit I**.  Mr. Wayne responded that he "had a lot of hoops to jump through" and discouraged Hi-Tech from taking legal action under the auspice that it would slow the process.

53.      On October 31, 2019, Mr. Wayne contacted counsel for Hi-Tech and indicated that USP Labs would agree to a reactivation of the social media accounts "*provided that* we receive a written agreement that Hi-Tech will not utilize the offending marks on social media.  Those marks are USPlabs, Jack3d, and USPlabs Jack3d" (emphasis in original).  **Exhibit J**.

54.      Given Hi-Tech's position that USP Labs had no valid trademark rights and no right to assert them in the marketplace, it did not wish to (and did not) agree to a permanent cessation.

55.      During a teleconference between counsel held later that day, counsel for Hi-Tech asked Mr. Wayne to identify the client contact(s) at USP Labs who requested the take downs and whose permission would be necessary to reinstate the pages.  Mr. Wayne refused to identify the individuals responsible for the assertion of trademark rights except to indicate that the individuals

10

in question included multiple people associated with USP Labs.  On information and belief, this includes, but may not be limited to, the individual Defendants named herein.

56.     As a counter-offer to USP Labs' offer that Hi-Tech never "utilize the offending marks on social media," counsel for Hi-Tech proposed a simple email stipulation whereby, in exchange for reactivation of the Hi-Tech social media accounts, Hi-Tech would immediately remove the postings which were the subject of the complaints by USP Labs (specifically those containing USPlabs, Jack3d, and USPlabs Jack3d) pending resolution of the dispute.  Counsel for Hi-Tech immediately sent an email confirming the teleconference and attempting to memorialize the stipulation.  **Exhibit J**.

57.     On November 1, 2019, counsel for Hi-Tech again contacted Mr. Wayne conveying his impression that the parties were in agreement, emphasizing that the matter was urgent, and confirming that no response had been received.  **Exhibit J**.  Mr. Wayne responded by indicating that the stipulation was acceptable to him, but he needed client confirmation.  In the interim, Mr. Wayne requested a copy of the notification Instagram sent to Hi-Tech and counsel for Hi-Tech immediately provided a copy of Exhibit E.  **Exhibit K**.

58.     Given the delay experienced in dealing with USP Labs directly, on November 4, 2019, counsel for Hi-Tech issued a Counter Submission to Report Numbers 515434222390505 and 425433828174094 directly to Instagram requesting that USP Labs' complaints be dismissed and Hi-Tech's social media sites be put back online for the reasons set forth herein.  **Exhibit L**.

59.     Following Hi-Tech's submission of the Counter Submission, Mr. Wayne sent an email to counsel for Hi-Tech conveying that USP Labs had agreed to notify Instagram that it does not object to the page being active provided that the offending conduct is removed.  **Exhibit M**. Counsel for Hi-Tech clarified that the stipulation was intended to be an agreement pending a

resolution, not an agreement by Hi-Tech to permanently refrain from using the identified marks under any circumstances.

60.     At the time of this filing, Hi-Tech's Instagram account is still offline which is causing irreparable harm to Hi-Tech, its business, its trademarks, its products and leading to a loss of goodwill, customers, market share, consumer confidence and loyalty.

61.     Attempting to preclude Hi-Tech from using trademarks that USP Labs cannot lawfully use in U.S. commerce, for the benefit of a corporate entity that is not supposed to exist anymore, is unlawful, inequitable and constitutes multiple violations of the plea agreement.

**USP Labs Assigns the Mark "MODERN BCAA" to Modern Sports Nutrition
Which In Turn Issues a Cease and Desist Letter to Hi-Tech**

62.     On May 29, 2019 – one day after USP Labs was obligated to cease operations – it ostensibly assigned federal trademark Registration No. 4,324,549 for "MODERN BCAA" to Modern Sports Nutrition. **Exhibit N**.

63.     This transfer of trademark rights is irreconcilable with the portion of the plea agreement wherein USP Labs "agrees not to sell, transfer, lease or otherwise alienate the company's name or other trademarks at any time."

64.     On October 23, 2019, Modern Nutrition issued a cease and desist letter to Hi-Tech asserting its alleged right in "MODERN BCAA," Registration No. 4,324,549. **Exhibit O**. Among other things, Modern Nutrition demands that Hi-Tech cease all use of MODERN BCAA and expressly abandon its existing trademark application.

65.     Based on the plea agreement, USP Labs is not in possession of any valid trademarks, is in no position to assert any trademarks associated with any products and has improperly assigned trademarks that are invalid and non-transferable.

12

66.     Accordingly, there is a real, actual and justiciable controversy regarding Hi-Tech's rights to use its trademarks in association with dietary supplement products, and maintain its trademark applications for, *inter alia*, the trademarks identified herein, including USP LABS, JACK3D, and MODERN BCAA.

## COUNT I
### (Tortious Interference with Prospective Business Relationships)

67.     Hi-Tech incorporates by reference paragraphs 1-66 as if fully set forth herein.

68.     Defendants committed tortious interference with prospective business relationship under Texas law because there is/was: (1) a reasonable probability that a third party would have entered into a contractual relationship with Hi-Tech; (2) an independently tortious or unlawful act by defendants that prevented the relationship from occurring; (3) a conscious desire by the defendants to prevent the relationship from occurring, or knowledge by the defendants that the interference was certain or substantially certain to occur as a result of his conduct; and (4) actual harm or damages suffered by Hi-Tech as a result of the defendant's interference.

69.     Given Hi-Tech's use of its social media to market its existing and prospective products, the number of followers or viewers, and the consummation of sales and other business that flows therefrom, there is at least a reasonable probability that the followers or viewers of Hi-Tech's social media would have purchased products from Hi-Tech or otherwise entered into a contractual relationship with Hi-Tech.

70.     The activities of Defendants, including the breach of the plea agreement, assertion of invalid trademarks and other activities complained of herein were unlawful and prevented Hi-Tech's customers or potential customers from purchasing product from Hi-Tech.

71.   Defendants had a conscious desire to prevent Hi-Tech's customers or potential customers from purchasing products (and had knowledge that removing Hi-Tech's social media was certain or substantially certain to prevent sales.

72.   Hi-Tech experienced actual harm in the form of, *inter alia*, loss of sales, goodwill, customers, market share, consumer confidence and loyalty as a result of the defendant's interference.

73.   As a result of Defendants' unlawful acts, Hi-Tech is suffering irreparable harm.

74.   Unless and until Defendants are enjoined by this Court, Defendants will continue to tortiously interfere with Hi-Tech's prospective business relationships and cause irreparable harm to Hi-Tech.

## COUNT II
### (Federal Unfair Competition)

75.   Hi-Tech incorporates paragraphs 1-66 as if fully set forth herein.

76.   Hi-Tech's trademarks set forth herein are inherently distinctive and/or have acquired secondary meaning through use and promotion.

77.   Defendants, in connection with goods, services, and containers for goods, have used and are using in commerce words, terms, names, symbols, and devices, and combinations thereof, and false designations of origin, false and misleading descriptions of fact, and false and misleading representations of fact, which are likely to cause confusion, and to cause mistake, and to deceive as to the affiliation, connection, or association of themselves with other persons, as to the origin, sponsorship, and approval of their goods, services, and commercial activities by other persons, in violation of 15 U.S.C. § 1125(a)(1)(A).

78.   Defendants, in connection with goods, services, and containers for goods, have used and are using in commerce words, terms, names, symbols, and devices, and combinations thereof,

14

and false designations of origin, false and misleading descriptions of fact, and false and misleading representations of fact, which, in commercial advertising and promotion, misrepresent the nature, characteristics, qualities, and geographic origin of their or other persons' goods, services, and commercial activities, in violation of 15 U.S.C. § 1125(a)(1)(B).

79.     By making unauthorized use of Hi-Tech's marks, by making false and misleading representations, and by committing other acts of unfair competition, Defendants are engaging in false designation, unfair competition, and false advertising in violation of 15 U.S.C. § 1125(a).

80.     Defendants' unauthorized use of Hi-Tech's marks and Defendants' false advertising are knowing, intentional, and willful in violation of 15 U.S.C. § 1125.

81.     As a result of Defendants' acts of unfair competition and false advertising, Hi-Tech is suffering irreparable harm.

82.     Unless and until Defendants are enjoined by this Court, Defendants will continue to commit acts of unfair competition and false advertising, and will continue to deceive the public and cause irreparable harm to Hi-Tech.

83.     Hi-Tech is entitled to recover from Defendants their profits, all damages that Plaintiffs have sustained from Defendants' unfair competition and false advertising, prejudgment interest, and the costs of the action pursuant to 15 U.S.C. § 1117.

84.     Because Defendants' conduct is willful, Hi-Tech is also entitled to recover from Defendants treble damages and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

### COUNT III
### (Common Law Unfair Competition)

85.     Hi-Tech incorporates paragraphs 1-66 as if fully set forth herein.

86.     Hi-Tech's trademarks are protected and/or eligible for protection, Hi-Tech is the senior users of those marks, and there is a likelihood of confusion between Hi-Tech's marks and the identical marks that Defendants are using and/or enforcing.

87.     By making unauthorized use and/or enforcement of the trademarks set forth herein, including USP Labs, JACK3D or combinations thereof, Defendants are committing unfair competition in violation of Texas common law and other applicable common law.

88.     Defendants' unauthorized use and/or enforcement of these trademarks is knowing, intentional and willful.

89.     As a result of Defendants' acts of unfair competition, Hi-Tech is suffering irreparable harm, for which they have no adequate legal remedy.

90.     Unless and until Defendants are enjoined by this Court, Defendants will continue to commit acts of unfair competition, and will continue to confuse the public and cause irreparable harm to Hi-Tech.

91.     Hi-Tech is entitled to recover from Defendants their profits, all damages that Hi-Tech has sustained from Defendants' unfair competition, and the costs of the action.

**COUNT IV**
**(Injury to Business Reputation)**

92.     Hi-Tech incorporates paragraphs 1-66 as if fully set forth herein.

93.     Hi-Tech's trademarks set forth herein are valid at common law, inherently distinctive, have acquired secondary meaning through use and promotion and/or are federally registered, or are the subject of applications for federal registrations.

94.     Defendants' unauthorized use or enforcement of Hi-Tech's trademarks is an act likely to injure Plaintiffs' business reputation or to dilute the distinctive quality of Hi-Tech's

marks, in violation of Section 16.29 of the Texas Business & Commerce Code, Tex. Bus. & Com. Code Ann. § 16.29.

95.     Defendants' unauthorized use or enforcement of Hi-Tech's marks is knowing, intentional, and willful.

96.     As a result of Defendants' acts of trademark infringement, Hi-Tech is suffering irreparable harm, for which it has no adequate legal remedy.

97.     Hi-Tech is entitled to injunctive relief, and to other appropriate remedies and relief.

**COUNT V**
**(Declaratory Judgment of Non-Infringement)**

98.     Hi-Tech incorporates paragraphs 1-66 as if fully set forth herein.

99.     Hi-Tech markets, offers for sale and sells dietary supplements over the internet and elsewhere in the United States under the trademarks set forth herein, including USP LABS, JACK3D and MODERN BCAA.

100.     Hi-Tech asserts that it is entitled to use these trademarks in United States commerce in association with its dietary supplements free of encumbrances from Defendants.

101.     Hi-Tech asserts that it is entitled to seek and secure state and/or federal registrations for its trademarks, including USP LABS, JACK3D and MODERN BCAA, or associated designs, in association with dietary supplements or any other applicable classes.

102.     Defendants deny and dispute that Hi-Tech is entitled to use these trademarks in commerce and claims that such use would interfere with Defendants' business, goodwill and/or its purported rights in their own trademarks.

103.     Defendants deny and dispute that Hi-Tech is entitled to register or otherwise seek protection in its trademarks.

17

104.   Defendants claim that MODERN BCAA was lawfully assigned to Modern Sports Nutrition, and as a result, Hi-Tech is infringing same, both of which Hi-Tech denies.

105.   As a result of Defendants' repeated threats, demands and adverse actions, there is a real, concrete and judiciable controversy between Hi-Tech and Defendants that touches their respective legal interests requiring relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

## COUNT VI
**(Declaratory Judgment of Trademark Invalidity and Cancellation of Registrations)**

106.   Hi-Tech incorporates paragraphs 1-66 as if fully set forth herein.

107.   A trademark includes any word, name, symbol, or device, or any combination thereof used in U.S. commerce by an entity to identify and indicate the source of goods.  15 U.S.C. § 1127.

108.   The use of a trademark in United States commerce must be lawful to qualify for common law protection and federal registration.  15 U.S.C. § 1127.

109.   The marketing and sale of dietary supplements must comply with the Controlled Substances Act (CSA), 21 U.S.C. §§ 801-971 to be lawful under federal law.

110.   Section 2(a) of the Trademark Act, 15 U.S.C. §1052(a), bars any trademark registration of any matter that is immoral, deceptive or scandalous.

111.   USP Labs purports to hold or has held federal trademark registrations for "USPlabs," U.S. Registration No. 3,954,592; "Jack3d," Registration No. 4,372,454; "USPlabs Jack3d," Registration No. 3,955,069; "Jack3d Micro," Registration No. 4,372,432, "OxyElite Pro," Registration No. 3,902,660; and "Modern BCAA," Registration No. 4,324,549 ("USP Labs' Marks").

112.    Defendants' use of these trademarks in association with the marketing of dietary supplements was not and is not legal under the plea agreement, common or state law, or federal law, but rather, constitutes illegal, immoral, deceptive and/or scandalous activities that do not qualify as lawful "use in commerce" under Sections 1 and 45 of the Trademark Act, 15 U.S.C. §§ 1051, 1052 and/or 1127.

113.    Accordingly, Defendants have no valid trademark rights in "USPlabs," "Jack3d," "USPlabs Jack3d," "Jack3d Micro," or "Modern BCAA."

114.    Defendants did not inform, and have not informed, the USPTO that they are precluded (i) from selling any dietary supplements, using trademarks associated with same, or (ii) from transferring the trademarks under the plea agreement.

115.    Defendants did not inform the USPTO that they used the trademarks in association with products that were unlawful and prohibited.

116.    Had the USPTO evaluated the application for these marks in association with these unlawful or prohibited activities, the marks would not have issued or been sustained.

117.    Accordingly, Defendants' trademark rights are invalid, unenforceable and the federal registrations for same are subject to cancellation under 15 U.S.C. § 1064 and § 1119.

### PRAYER FOR RELIEF

WHEREFORE, Hi-Tech prays for judgment in its favor and against Defendants as follows:

a.    That this Court adjudge and decree that Defendants have engaged in and continue to engage in tortious interference with prospective business advantage, common law unfair competition, federal unfair competition and injury to business reputation;

b.    That this Court grant injunctions enjoining the aforesaid acts of tortious interference with prospective business advantage, common law unfair competition, federal

unfair competition, injury to business reputation by Defendants, their officers, agents, servants, employees, subsidiaries and attorneys, and those acting in concert with them;

c.      That this Court enter a judgment that Hi-Tech, through its use of its trademarks, has not infringed and does not infringe or violate any purported right of any of the Defendants, including any alleged rights in the USP Labs' Marks;

d.      That this Court enter an order that all of Hi-Tech's trademark applications in the USPTO or state administrative offices shall be allowed to issue without opposition or other interference from any of the Defendants;

e.      That this Court enter a judgment that the Defendants and their agents, servants, employees, representatives, successors, and assigns, and all persons, firms, or corporations in active concert or participation with Defendants, be temporarily, preliminarily, and permanently enjoined and restrained from engaging in, and assisting or inducing others in, either directly or indirectly: (i) interfering with Hi-Tech's marketing and sale of its products, or use of its trademarks in association with same, in any context, including online and through social media; (ii) seeking state or federal trademark protection for any trademarks in association with any dietary supplements; (iii) using, assigning, transferring or otherwise alienating the USP Lab's Marks to any third parties; and (iv) acting in any manner that hinders, or is designed to hinder Hi-Tech's business activities that relate to its trademark or the marketing or sale of its dietary supplements under same;

f.      That this Court enter a judgment that Defendants' alleged rights in the USP Labs' Marks are invalid, unenforceable and cancelled;

g.    That this Court direct the Director of the USPTO to remove the registrations for the USP Labs' Marks from the Principal Register;

h.    That this Court enter an award to Hi-Tech of such damages that are adequate to compensate Hi-Tech for Defendants' tortious interference with prospective business advantage, common law unfair competition, federal unfair competition, injury to business reputation;

i.    That this Court order an award to Plaintiffs of up to three times the amount of damages because of Defendants' willful unfair competition, and any enhanced damages, provided by 15 U.S.C. § 1117 or any other federal, state or applicable statute;

j.    That this Court render a finding that this case is "exceptional" and award to Hi-Tech its costs and attorneys' fees pursuant to 15 U.S.C. § 1117; and

k.    That this Court grant to Plaintiffs such other, further, and different relief as may be just and proper.

## **JURY DEMAND**

Hi-Tech demands a trial by jury on all issues so triable.


                                          Respectfully submitted,


Dated:  November 5, 2019                  By: *Michael Smith*
                                          Michael C. Smith
                                          State Bar No. 18650410
                                          Siebman, Forrest, Burg & Smith, LLP
                                          4949 Hedgcoxe Road, Suite 230
                                          Plano, Texas  75024
                                          Telephone:    903-938-8900
                                          E-Mail:   michaelsmith@siebman.com

HILLYER LEGAL, PLLC
Gregory L. Hillyer (Notice of Special Appearance
to be filed)
5335 Wisconsin Avenue, NW
Suite 440
Washington, D.C.  20015
E-mail: *ghillyer@hillyerlegal.com*

ATTORNEYS FOR PLAINTIFF
HI-TECH PHARMACEUTICALS, INC.