IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| HI-TECH PHARMACEUTICALS, INC., § § § Plaintiff, § § v. § MODERN SPORTS NUTRITION, § LLC, § § Defendant. § | Case No. 3:19-cv-02639-X |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court in this trademark infringement suit are Plaintiff Hi-Tech Pharmaceuticals, Inc.'s (Hi-Tech) Motion for Partial Summary Judgment (ECF No. 74) and its Motion for Terminating and Monetary Sanctions (ECF No. 84). For the reasons stated, the Court should GRANT in part and DENY in part the Motion for Partial Summary Judgment. Also, the Court should GRANT in part and DENY in part the Motion for Terminating and Monetary Sanctions.

## Background

Hi-Tech makes and sells dietary supplements in the United States and other countries. Compl. 6 (ECF No. 1). Since 2019, it has marketed and sold a product called "MODERN BCAA." Compl. 8. Earlier however, in 2013, USPLabs, LLC, registered a trademark for "MODERN BCAA" for use in dietary and nutritional supplements. Modern BCAA, Registration No. 4,324,549.

1

In 2015, the United States Attorney's Office for the Northern District of Texas filed a criminal indictment against USPLabs and many of its principals—including Jacobo Geissler and Jonathan Doyle—for adulterating and misbranding products.[1] *See* Compl. 3; *see also* Indictment, *United States v. USPLabs, LLC*, No. 15-cr-496 (N.D. Tex. Nov. 4, 2015), ECF No. 1. According to the indictment, USPLabs and its principals engaged in a conspiracy to import ingredients from China using false certificates of analysis and false labeling and lied about the source and nature of those ingredients after putting them in the products. Compl. 1. The indictment also alleged that USPLabs and the other indicted defendants sold some of their products without determining whether they would be safe to use when they knew of studies that linked the products to liver toxicity. Compl. 1.

On March 5, 2019, pursuant to a plea agreement, USPLabs entered a plea of guilty to a single count of conspiracy to introduce misbranded food into interstate commerce with intent to defraud and mislead, in violation of 18 U.S.C. § 371. Plea Agreement, *United States v. USPLabs, LLC*, No. 15-cr-496 (N.D. Tex. Feb. 28, 2019), ECF No. 694. As part of its plea agreement, USPLabs agreed to cease all business activities within 90 days of entry of the plea agreement and immediately begin the liquidation of its inventory. Plea Agreement 3, *supra*. It further promised "not to sell, transfer, lease, or otherwise alienate the company's name or other

---

[1] Hi-Tech filed this action against USPLabs, Geissler, and Doyle, as well as Modern Sports Nutrition, LLC, but Hi-Tech has dismissed USPLabs, Geissler, and Doyle, leaving Modern Sports Nutrition, LLC, as the sole remaining defendant. *See* ECF Nos. 58, 60.

trademarks *at any time.*" Plea Agreement 3, *supra* (emphasis added). On May 29, 2019, however, USPLabs purportedly assigned its interests in the "MODERN BCAA" mark to Defendant Modern Sports Nutrition, LLC (Modern Sports) in apparent contravention of the terms of its plea agreement. Trademark Assignment Cover Sheet, Modern BCAA, Registration No. 4,324,549.

On October 2, 2019, allegedly in reliance on the promise in USPLabs's plea agreement to cease all business activities, Hi-Tech filed a trademark application for the MODERN BCAA mark and prepared to begin marketing its own products using that name. Modern BCAA, Registration No. 88/639,582. Three weeks later, Hi-Tech received a cease-and-desist letter from Modern Sports demanding Hi-Tech stop using MODERN BCAA to market its products and to abandon its trademark application. Compl., Ex. 15, at 1-4 (ECF No. 1-15). This suit followed.

In its complaint, Hi-Tech alleged that Modern Sports engaged in tortious interference with prospective business relationships; violated federal unfair competition laws through false and misleading representations; violated common law standards for unfair competition; and injured Hi-Tech's business reputation. Compl. 13-17. Hi-Tech claimed that it should be permitted to use, pursue a federal registration on, and otherwise have freedom to operate regarding the MODERN BCAA trademark. Compl. 13-17. It therefore sought declaratory judgments of non-infringement and trademark invalidity for several of the original USPLabs marks, including the MODERN BCAA mark. Compl. 17-18. It also requested

compensatory damages, treble damages for willful unfair competition claims, and attorneys' fees. Compl. 21.

Modern Sports denied Hi-Tech's allegations and asserted counterclaims for (i) counterfeiting, (ii) trademark infringement, (iii) false designation of origin, (iv) unfair competition, (v) false advertising, (vi) common law trademark infringement, and (vii) common law unfair competition. Answer 29-38 (ECF No. 5).

Throughout the litigation, Hi-Tech experienced difficulty in obtaining discovery materials from Modern Sports. Hi-Tech served its first set of discovery requests—including interrogatories, requests for production, and requests for admission—on March 24, 2022. Pl.'s Am. Mot. Compel 3 (ECF No. 77). Modern Sports requested at least three deadline extensions—to May 6, 2022—and Hi-Tech granted these extensions with no objections. Pl.'s Am. Mot. Compel 3-4. When Modern Sports continued to withhold its discovery responses, Hi-Tech filed a motion to compel. Pl.'s Am. Mot. Compel. Thereafter, the parties represented they had resolved their dispute, and the Court entered an agreed order regarding discovery. Order 1-2 (ECF No. 81). Despite this order, Modern Sports again failed to comply with its discovery obligations. Notice Non-Compliance 1-2 (ECF No. 83). To date, Modern Sports has failed to provide any discovery responses. Br. Mot. Summ. J., Ex. A, at 1 (ECF No. 75-2). Hi-Tech thus filed a Motion for Terminating and Monetary Sanctions asking the Court to terminate the case, strike Modern Sports's answer, and award attorneys' fees. Mot. Term. & Sancts. (ECF No. 84).

Modern Sports did not respond to Hi-Tech's sanctions motion. Notice Non-Resp. II (ECF No. 86).

Also in May 2022, Hi-Tech filed the pending motion for partial summary judgment. Mot. Summ. J. 1-3 (ECF No. 74). First, Hi-Tech seeks summary judgment on Count V of its complaint which requests a declaratory judgment of non-infringement on the MODERN BCAA mark. Mot. Summ. J. 6, 12-13. Second, Hi-Tech seeks summary judgment on Count VI of its complaint which requests a declaratory judgment of invalidity and cancellation of Modern Sports's registration of the MODERN BCAA mark. Mot. Summ. J. 6, 12-13. Third, Hi-Tech moves for summary judgment on all Modern Sports's counterclaims and requests dismissal of those counterclaims with prejudice. Mot. Summ. J. 13-14. Modern Sports did not respond to Hi-Tech's Motion for Partial Summary Judgment. Notice Non-Resp. I (ECF No. 79).

Given the Court's general preference for deciding cases on their merits rather than through discovery sanctions, the Court first considers Hi-Tech's Motion for Partial Summary Judgment.

## Legal Standards and Analysis

I. <u>HI-Tech's Motion for Partial Summary Judgment</u>

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment bears the initial burden of showing the absence of a genuine issue for trial. *Duffy v. Leading Edge Prods.,*

5

*Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (citation omitted). The movant may satisfy its burden by demonstrating that there is an absence of evidence to support the nonmoving party's case, which the nonmovant bears the burden of proving at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). With respect to claims or defenses upon which the movant bears the burden of proof at trial, the movant must establish each element of the claim or defense "beyond peradventure." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).

Once the movant meets its initial burden, the nonmovant must show that summary judgment is not proper. *Duckett v. City of Cedar Park*, 950 F.2d 272, 276 (5th Cir. 1992) (citation omitted). The parties may satisfy their respective burdens "by tendering depositions, affidavits, and other competent evidence." *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992) (first citing *Int'l Shortstop, Inc. v. Rally's*, 939 F.2d 1257, 1263 (5th Cir. 1991); and then citing Fed. R. Civ. P. 56(e)). All evidence must be viewed in the light most favorable to the party opposing the summary judgment motion. *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993) (citing *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986)).

Competent summary judgment evidence may include admissions under Rule 36(a) which provides that litigants may "serve on any other party a written request to admit . . . the truth of any matters within the scope of Rule 26(b)(1) relating to: [] facts, the application of law to fact, or opinions about either." Fed. R. Civ. P. 36(a)(1)(A); *see* Fed. R. Civ. P. 56(c)(1)(A). "A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves

6

on the requesting party a written answer or objection . . . ." Fed. R. Civ. P. 36(a)(3). Any matters admitted are "conclusively established." *Id.* The Fifth Circuit "has stressed that a deemed admission can only be withdrawn or amended by motion in accordance with Rule 36(b)." *In re Carney*, 258 F.3d 415, 419 (5th Cir. 2001) (citing *American Auto. Ass'n v. AAA Legal Clinic*, 930 F.2d 1117, 1120 (5th Cir. 1991)). Without any amendment or withdrawal, these Rule 36 admissions "cannot be overcome at the summary judgement stage by contradictory affidavit testimony or other evidence in the summary judgment record." *Id.* at 420.

The party opposing the summary judgment motion must identify specific evidence in the record and state the precise manner in which that evidence supports the party's claim. *Esquivel v. McCarthy*, 2016 WL 6093327, at *2 (N.D. Tex. Oct. 18, 2016) (Lindsay, J.) (citing *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1988)). "Rule 56 does not impose a duty on the court to 'sift through the record in search of evidence' to support the nonmovant's opposition to the motion for summary judgment." *Id.* (first citing *Ragas*, 136 F.3d at 458; and then citing *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992)). However, if the nonmoving party does not respond to the motion, the Court treats the facts the moving party has raised as "undisputed for the purposes of the motion." Fed. R. Civ. P. 56(e)(2); *see Eversley v. MBank Dall.*, 843 F.2d 172, 174 (5th Cir. 1988).

> a. *Hi-Tech is entitled to summary judgment on all of Modern Sports's counterclaims and a declaratory judgment of non-infringement of the MODERN BCAA mark.*

Modern Sports's trademark infringement counterclaims are governed by the Lanham Act, 15 U.S.C. § 1051 *et seq*. To prevail on its trademark infringement claim, Modern Sports must "first 'establish ownership in a legally protectible mark, and second, . . . show infringement by demonstrating a likelihood of confusion.'" *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 235-36 (5th Cir. 2010); *see* 15 U.S.C. §§ 1051 *et seq*.

Additionally, Modern Sports's other counterclaims based on the Lanham Act (for counterfeiting, false designation of origin, unfair competition, and false advertising) must "meet[] the threshold requirement that the [party] must possess a protectible mark" that then "creates a likelihood of confusion in the minds of potential consumers." *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 193-94 (5th Cir. 1998) (trademark infringement); *see, e.g.*, *Union Nat'l Bank of Tex. v. Union Nat'l Bank of Tex.*, 909 F.2d 839, 842 (unfair competition); *Hamdan v. Tiger Bros. Food Mart, Inc.*, 2016 WL 1192679, at *3 (M.D. La. Mar. 22, 2016) (citing *Elvis Presley Enters., Inc.*, 141 F.3d at 194) (false designation of origin). Modern Sports's allegations of common law infringement and unfair competition present the same issues as those based on the Lanham Act. *See Amazing Spaces, Inc.*, 608 F.3d at 235 n.7 (quoting *Horseshoe Bay Resort Sales Co. v. Lake Lyndon B. Johnson Improvement Corp.*, 53 S.W.3d 799, 806 n.3 (Tex. App.—Austin 2001, pet. denied)) ("A trademark infringement and unfair competition action under

Texas common law presents essentially 'no difference in issues than those under federal trademark infringement actions.'").

By its failure to respond to Hi-Tech's requests for admission, Modern Sports is deemed to have admitted (i) Modern Sports "has no rights in the MODERN BCAA Mark," (ii) Modern Sports "does not own the MODERN BCAA Mark," (iii) "USP Labs did not lawfully transfer ownership of the MODERN BCAA Mark to Modern Sports," and (iv) "[a]ny transfer of ownership of the MODERN BCAA mark by USPLabs to Modern Sports is null and void." Br. Mot. Summ. J., Ex. A, at 2; Br. Mot. Summ. J., Ex. B, at 7-8 (ECF No. 75-3).

Modern Sports also has admitted that Hi-Tech has never used the MODERN BCAA mark in commerce in the United States, has never sold any products bearing the MODERN BCAA mark, and has never generated any revenue from the sale of any products bearing the MODERN BCAA mark. *Id.* Further, Modern Sports has admitted there is "no likelihood of confusion" and "no actual confusion" between the registered MODERN BCAA trademark and any alleged use of the mark or any similar mark by Hi-Tech. *Id.*

Modern Sports has not asked the Court to set aside the deemed admissions; nor did it respond to Hi-Tech's summary judgment motion. It has proffered no evidence to raise a fact issue that it has any valid ownership interest in the MODERN BCAA mark, or that Hi-Tech's use of any mark is likely to result in confusion. Thus, the uncontroverted summary judgment evidence demonstrates that Modern Sports cannot prevail on its counterclaim for trademark

9

infringement, or any of its counterclaims under the Lanham Act or common law, and Hi-Tech is entitled to summary judgment on Modern Sports's counterclaims, as well as its own claim for a declaratory judgment of trademark non-infringement.

> *b. Hi-Tech is not entitled to a declaratory judgment that the MODERN BCAA mark is invalid and U.S. Registration No. 4,324,549 should be cancelled.*

Under the Lanham Act, registration of a mark with the United States Patent and Trademark Office (PTO) constitutes prima facie evidence of the mark's validity and the registrant's exclusive right to use the registered mark in commerce with respect to the specified goods or services. 15 U.S.C. §§ 1057(b), 1115(a); *Elvis Presley Enters., Inc.*, 141 F.3d at 194. However, the statute also provides that "[i]n any action involving a registered mark the court may . . . order the cancelation of registrations, in whole or in part." 15 U.S.C. § 1119. Specifically, the Lanham Act allows a party to petition the court for cancellation:

> [a]t any time if the registered mark becomes the generic name for the goods or services . . . for which it is registered, or is functional, or has been abandoned, or its registration was obtained fraudulently or contrary to the provisions of section 1054 of this title or of subsection (a), (b), or (c) of section 1052 of this title for a registration under this chapter, . . . or if the registered mark is being used by, or with the permission of, the registrant so as to misrepresent the source of the goods or services on or in connection with which the mark is used.

15 U.S.C. § 1064(3). *But see Iancu v. Brunetti*, 139 S. Ct. 2294, 2302 (2019) (holding that § 1052(a)'s ban on registration of "immoral, deceptive, or scandalous matter" violates the First Amendment).

On summary judgment, Hi-Tech argues that the MODERN BCAA mark is invalid and U.S. Registration No. 4,324,549 should be cancelled because:

> Modern Sports has admitted that it has *no rights* in the MODERN BCAA Mark; *does not own* the MODERN BCAA Mark; and that any transfer of the MODERN BCAA Mark from USP Labs was *unlawful and is null and void*.

Mot. Summ. J. 8 (internal citations omitted). Accordingly, the Court limits its summary judgment analysis to consideration of abandonment and fraud as possible avenues for cancellation.

Abandonment demands evidence of "both (1) discontinued use of the mark and (2) inten[t] not to resume its use." *Vais Arms, Inc. v. Vais*, 383 F.3d 287, 293 (5th Cir. 2004) (citing 15 U.S.C. § 1127). Cancellation based on fraud requires, among other things, evidence of "the registrant's knowledge or belief that the representation is false (scienter); [] the intention to induce action or refraining from action in reliance on the misrepresentation; [and] reasonable reliance on the misrepresentation." *Nursery Decals & More, Inc. v. Neat Print, Inc.*, 568 F. Supp. 3d 681, 700 (N.D. Tex. Oct. 22, 2021). And courts have been firm that either route places a "heavy burden" on the party seeking cancellation and that both demand clear and convincing evidence. *See Perry v. H. J. Heinz Co. Brands, L.L.C.*, 994 F.3d 466, 474 (5th Cir. 2021) ("[A] party claiming that a trademark has been intentionally abandoned bears a heavy burden."); *Dall. Cowboys Football Club, Ltd. v. Am.'s Team Props., Inc.*, 616 F. Supp. 2d 622, 644 (N.D. Tex. 2009) ("The moving party bears a heavy burden in proving fraud in the procurement of a registration."); *see also* 3 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 17:12 (5th ed. 2022).

On the record before it, the Court cannot find that Hi-Tech has met its burden to demonstrate that cancellation of the MODERN BCAA mark would be proper. Modern Sports's deemed admissions, without more, do not provide clear and convincing proof of Modern Sports's knowledge or intent regarding any representation to the PTO or its future plans. *See Ellipse Comms., Inc. v. Caven*, 2009 WL 3398709, at *7 (N.D. Tex. Oct. 16, 2009) ("Intent is generally a question of fact for the jury."). Further, if USPLabs's transfer of the mark to Modern Sports is deemed null and void, then USPLabs may have retained ownership of the mark. Modern Sports's deemed admissions are not evidence of USPLabs's knowledge or intent. And USPLabs may be a required party under Rule 19, *see Escamilla v. M2 Tech., Inc.*, 536 F. App'x 417, 421 & n.2 (5th Cir. 2013) (noting that "the primary mark-holder" is a required party in a trademark infringement action), but USPLabs was dismissed on August 16, 2021. *See* ECF Nos. 58, 60.

For these reasons, Hi-Tech is not entitled to a declaratory judgment that the MODERN BCAA mark is invalid or that U.S. Registration No. 4,324,549 should be cancelled.

II.   <u>The Motion for Terminating and Monetary Sanctions</u>

Hi-Tech also moves for sanctions—under the court's inherent powers or as authorized under Rule 37—including: (i) an order striking Modern Sports's pleadings, (ii) an entry of default judgment against Modern Sports, and (iii) an award of Hi-Tech's attorneys' fees and costs for the entire action. Mot. Term. & Sancts. 1.

Rule 37(b) of the Federal Rules of Civil Procedure empowers courts to impose sanctions for failures to obey discovery orders. *See, e.g.*, *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 488 (5th Cir. 2012); *see also* Fed. R. Civ. P. 37(b)(2)(A) (noting that when a party fails to comply with a discovery order, the court may order—among other things—striking pleadings in whole or in part, dismissing the action in whole or in part, and rendering a default judgment against the disobedient party). Alternatively, or in addition to the sanctions listed in Rule 37(b)(2)(A), "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C). A party's discovery conduct is "substantially justified" under Rule 37 if it is a proportional response to a genuine dispute, or if reasonable people could differ as to the appropriateness of the challenged conduct. *See S.E.C. v. Kiselak Cap. Grp., LLC*, 2012 WL 369450, at *5 (N.D. Tex. Feb. 3, 2012) (first quoting *Devaney v. Cont'l Am. Ins. Co.*, 989 F.2d 1154, 1163 (11th Cir. 1993); and then quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)). "The burden rests on the party who failed to comply with the order to show that an award of attorney's fees would be unjust or that the opposing party's position was substantially justified." *Id.* at *3; *see also Samsung Elecs. Am., Inc. v. Yang Kun Chung*, 321 F.R.D. 250, 278 (N.D. Tex. 2017).

A district court "has broad discretion under Rule 37(b) to fashion remedies suited to the misconduct." *Pressey v. Patterson*, 898 F.2d 1018, 1021 (5th Cir. 1990). However, this discretion is not unlimited. *Smith & Fuller, P.A.*, 685 F.3d at 488. The sanction imposed should be the least severe sanction adequate to achieve the proper functions of Rule 37(b)(2) under the particular circumstances. *See id.* at 488-90. A finding of "bad faith or willful misconduct" is normally required to support the most severe remedies under Rule 37(b)—striking pleadings or dismissal of a case. *Id.* at 488; *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1304 (5th Cir. 1988) ("We have repeatedly emphasized that a dismissal with prejudice is a 'draconian' remedy, or a 'remedy of the last resort,' to be employed only when the failure to comply with the court's order results from willfulness or bad faith rather than from an inability to comply. Nevertheless, deliberate, repeated refusals to obey discovery orders have been held to warrant the use of this ultimate sanction."); *Tech. Chem. Co. v. IG-LO Prods. Corp.*, 812 F.2d 222, 224 (5th Cir. 1987) ("Entry of a default judgment is an appropriate sanction when the disobedient party has failed to comply with a court order because of willfulness, bad faith, or other fault on its part, as opposed to its inability to comply with the court's order.").

District courts also have inherent power to impose sanctions for litigation misconduct. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991). This inherent power derives from a district court's need "to manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases." *Id.* at 43. The imposition

of sanctions pursuant to a court's inherent power, however, "must be exercised with restraint and discretion," *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980), and "requires a finding of bad faith or willful abuse of the judicial process." *In re Moore*, 739 F.3d 724, 729 (5th Cir. 2014) (internal quotation marks omitted) (quoting *Gonzalez v. Trinity Marine Grp., Inc.*, 117 F.3d 894, 898 (5th Cir. 1997)); *Elliot v. Tilton*, 64 F.3d 213, 217 (5th Cir. 1995) (citing *Chaves v. M/V Medina Star*, 47 F.3d 153, 156 (5th Cir. 1995)) (cautioning that "the threshold for the use of inherent power sanctions is high"). "[T]he finding of bad faith must be supported by clear and convincing proof." *Crowe v. Smith*, 261 F.3d 558, 563 (5th Cir. 2001). The severe sanction of dismissal or default judgment pursuant to a court's inherent authority should only be imposed as a last resort when less drastic sanctions will not ensure compliance with the court's orders. *See Sample v. Miles*, 239 F. App'x 14, 19 n.14 (5th Cir. 2007) ("Sanctions under a court's inherent power to punish abusive litigation practices are permissible but should be used as a last resort, if sanctions under the Federal Rules [do not] fit and there is 'bad faith.'"). When exercising its inherent power, the court must comply with due process in determining bad faith and affixing sanctions. *Chambers*, 501 U.S. at 50.

Here, the record establishes that Modern Sports failed to participate in discovery after multiple deadline extensions and disregarded an agreed upon court order to answer Hi-Tech's discovery requests. Br. Mot. Term. & Sancts. 6-9 (ECF No. 85); Br. Mot. Summ. J., Ex. A, at 2; Notice Non-Resp. I, at 1; Notice Non-Resp. II, at 1. Indeed, to this date, Modern Sports has not responded to Hi-Tech's

discovery requests and has not offered any reasons to substantially justify its failure.

Hi-Tech asserts that Modern Sports's lack of participation in discovery, coupled with its inaction in defense of its claims, rises to the level of "bad faith litigation" and "contumacious conduct" warranting sanctions under the Court's inherent powers. Br. Mot. Term. & Sancts. 12. Even if the Court agrees, it should exercise restraint before invoking its inherent authority to dismiss Modern Sports's claims and defenses in this case. Indeed, resort to the Court's inherent powers to sanction parties is not necessary in view of the effect of Modern Sports's deemed admissions. And Hi-Tech has shown that Modern Sports violated an agreed-upon court order compelling discovery and caused Hi-Tech to incur costs and delays resulting from the discovery failures. *See* Br. Mot. Summ. J., Ex. A, at 2. Therefore, as required by Rule 37, the Court should award Hi-Tech its attorneys' fees and costs, but only those that resulted from Modern Sports's failure to comply with the court order.

## Recommendation

For the reasons stated, the District Court should GRANT in part Hi-Tech's Motion for Partial Summary Judgment (ECF No. 74) and enter a declaratory judgment of non-infringement in Hi-Tech's favor. The Court should further DISMISS with prejudice all of Modern Sports's counterclaims. In all other respects, the Court should DENY Hi-Tech's Motion for Partial Summary Judgment.

Additionally, the District Court should GRANT in part and DENY in part the Motion for Terminating and Sanctions (ECF No. 84). Specifically, the District Court should deny Hi-Tech's request for default judgment and the striking of Modern Sports's pleadings and partially grant Hi-Tech's request for attorneys' fees under Rule 37(b). The Court should order Hi-Tech to file an affidavit and supporting evidence setting forth the amount of fees to be awarded.

**SO RECOMMENDED.**

November 14, 2022.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Svcs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).